* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. Defendant-Employer regularly employed three or more employees, and all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and that there is no question as to the joinder or non-joinder of parties.
4. An employee-employer relationship existed the plaintiff and defendant-employer at all relevant times.
5. On or about April 2, 2004, plaintiff was employed by defendant-employer at an average weekly wage of $463.01, which yields a compensation rate of $308.69.
6. The parties stipulated into evidence, as Stipulated Exhibit # 1, the Pre-Trial agreement.
7. The parties stipulated into evidence, as Stipulated Exhibit # 2, Medical Records.
8. The parties stipulated into evidence, as Stipulated Exhibit # 3, Industrial Commission forms.
9. The parties stipulated into evidence as Stipulated Exhibit # 4, the deposition transcription of Eduardo Montez and two videos.
10. The parties stipulated into evidence, as Stipulated Exhibit # 5, defendants' responses to plaintiff's first set of interrogatories and request for production of documents.
11. The parties Stipulated into evidence, as Stipulated Exhibit # 6, plaintiff's REDA claim and documentation.
 * * * * * * * * * * * *Page 3 RULINGS ON EVIDENTIARY MATTERS
The objections contained in the depositions of Michael Frye, M.D., and James Serene, M.D., are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 * * * * * * * * * * * RULING ON MOTION TO ADMIT ADDITIONAL EVIDENCE
Plaintiff has moved to admit into the record additional evidence in the form of a medical evaluation report by Dr. Maher Habashi, which contains a permanent partial disability rating assigned to the plaintiff's right arm. Defendants have objected to the entry of Dr. Habashi's evaluation report. The Full Commission, in its discretion, hereby GRANTS plaintiff's motion and hereby admits Dr. Habashi's evaluation report into the evidentiary record of this matter.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as a dock worker and general laborer. On the date of injury, April 2, 2004, plaintiff was 55 years old. Plaintiff was hired to, among other things, unload various perishable products and stage such products to go through a deep freezing process for shipment to other locations. Such products included chicken, shrimp, and other items requiring constant refrigeration.
2. Plaintiff testified that on April 2, 2004, while operating a pallet jack at work, he attempted to avoid a collision with another pallet jack that was approaching him at a swift rate of speed. When plaintiff attempted to maneuver around the oncoming pallet jack, his pallet jack *Page 4 
spun on the wet floor and knocked him to the ground, causing injury to his right shoulder. Immediately upon plaintiff's fall from the jack hammer, co-workers Eduardo Montez and Jeff Jones, arrived to his aide. Plaintiff reported experiencing pain to them. As they assisted plaintiff in regaining his footing, James Barefoot, plaintiff's supervisor appeared and was informed by Mr. Montez and Mr. Jones that plaintiff had suffered an injury. According to the plaintiff, supervisor Mr. Barefoot instructed him to keep working. Plaintiff worked for approximately thirty minutes, and then went home because of his pain and inability to use his right arm. Plaintiff's testimony regarding the work-related accident and surrounding events on April 2, 2004, is corroborated by the testimony of co-worker Mr. Montez and is, thus, found to be credible.
3. Plaintiff was unable to seek treatment on the day of the accident because he did not have a way to get to the hospital. But the following day, April 3, 2004, plaintiff's stepson took him to Iredell Memorial Hospital. There, plaintiff was treated by Dr. Michael Frye, who diagnosed plaintiff with a hairline fracture of the right humerus. Dr. Frye noted in his report that plaintiff reported that he had injured his shoulder at work the previous day, an account that is consistent with plaintiff's testimony. Dr. Frye discharged plaintiff with a prescription for Vicodin and placed his arm in a sling, advising plaintiff to wear the sling while working.
4. Plaintiff returned to work on April 5, 2004, wearing the sling and on his medication. While performing his job, plaintiff was approached by supervisor Mr. Barefoot, who questioned plaintiff as to why his performance speed had declined. Plaintiff responded that his "shoulder was hurting from the fall." As a result, defendant-employer transferred plaintiff from first shift, which he had always worked prior to the accident, to third shift. However, the third shift work actually worsened plaintiff's pain because of additional exposure to refrigeration temperatures. *Page 5 
5. Plaintiff worked through his pain on third shift for three weeks until May 10, 2004, when he presented to Dr. Michael Bridges at Carolina Family Medicine and Urgent Care. Dr. Bridges noted that plaintiff reported a work-related accident on April 2, 2004, in which he fell from a pallet jack and injured his right shoulder. Dr. Bridges prescribed for plaintiff more pain medication, referred him to be seen as soon as possible by an orthopedist, and gave him a work note prohibiting the use of his right arm. Plaintiff gave the note to his supervisor at that time, Jimmy Fuller, who told him to go home for the day.
6. On May 17, 2004, plaintiff was seen by Dr. James W. Serene, a board-certified orthopedic surgeon. Upon examination, Dr. Serene ordered an MRI of the right shoulder.
7. The plaintiff testified that on May 22, 2004, defendant-employer terminated plaintiff's employment due to unsatisfactory performance. The Full Commission finds that plaintiff's unsatisfactory performance was directly attributable to his April 2, 2004 work-related accident because, as of the date of plaintiff's termination, he was still unable to use his right arm. Defendants have attempted to argue that plaintiff was terminated for reasons unrelated to the injury by accident, and have produced two corrective action reports. However, the authenticity of the reports, specifically plaintiff's signature, appears uncertain. Moreover, defendants have failed to show that a non-disabled employee would have been terminated for the same alleged corrective actions. Thus, the Full Commission finds that plaintiff was improperly terminated for reasons related to his work-related injury.
8. On May 24, 2004, plaintiff underwent an MRI, which revealed a rotator cuff tear. On June 22, 2004, Dr. Serene performed an arthroscopic repair of the rotator cuff tear. Dr. Serene performed a second surgery to plaintiff's arm on October 20, 2004. Dr. Serene released *Page 6 
plaintiff from his care without restrictions on November 1, 2004, and assigned a fifteen percent (15%) permanent partial disability rating to plaintiff's right arm.
9. On May 12, 2005, plaintiff sought from Dr. Maher Habashi a second opinion regarding the disability rating to plaintiff's arm. Dr. Habashi was of the opinion that plaintiff sustained a twenty-five (25%) permanent partial disability rating to his right arm. In weighing the ratings assigned by Dr. Serene, and Dr. Habashi, the Full Commission gives greater weight to the rating given by Dr. Serene, who was plaintiff's treating physician. Thus, the Full Commission finds that plaintiff sustained a fifteen percent (15%) permanent partial disability rating to his right arm.
10. Plaintiff was unable to obtain another job until December 17, 2004, when plaintiff began performing construction work, earning the same or greater wages as he earned while working for defendant-employer. Plaintiff had continued in this employment as of the date of hearing before the Deputy Commissioner.
11. Dr. Frye was deposed in this matter, and testified that it was more likely than not that plaintiff's hairline fracture and rotator cuff tear were caused by the April 2, 2004, injury by accident. Dr. Serene, who was also deposed in this matter, was not willing to state that plaintiff's accident more likely than not caused the rotator cuff injury because a number of people experience rotator cuffs without a precipitating injury. However, Dr. Serene did admit that it was possible that plaintiff suffered a rotator cuff tear from his work-related injury on April 2, 2004. In reviewing the totality of the medical evidence of record, including the testimony of Dr. Frye and Dr. Serene, and given the temporal relationship between the accident and the development of plaintiff's right shoulder condition, the Full Commission deems there to be sufficient evidence in *Page 7 
which to find that plaintiff's hairline fracture and rotator cuff tear were caused by the April 2, 2004, injury by accident.
12. Plaintiff did not file the Form 18 in this matter until after his termination by defendant-employer, which is more than thirty days from the accident date; however, the evidence of record shows that defendant-employer had knowledge of the accident by virtue of plaintiff reporting the incident to his supervisor almost immediately after the accident occurred. Thus, the Full Commission finds that defendants were not prejudiced by the late filing of the Form 18 in this matter because the defendant-employer had actual knowledge of plaintiff's injury.
13. The Full Commission finds that the defendants' defense of this claim was not unreasonable, and finds that attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is unwarranted.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown that he sustained an injury by accident to his right arm and shoulder when he fell from a pallet jack while in the course and scope of his employment on April 2, 2004. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not file the Form 18 in this matter until after his termination by defendant-employer; however, plaintiff's claim is not barred because defendant-employer had knowledge of the accident by virtue of plaintiff reporting the incident to his supervisor almost immediately after the accident occurred. N.C. Gen. Stat. § 97-22; SeeLakey v. U.S. Airways, 155 N.C.App. 169, 573 S.E.2d 703 (2002). Further, defendants were not prejudiced by the late filing *Page 8 
of the Form 18 in this matter because the defendant-employer had actual knowledge of plaintiff's injury. Id.
3. When an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated, the employer seeking to bar compensation for temporary partial or total disability must first show that employee was terminated for misconduct or fault, unrelated to compensable injury, for which a non-disabled employee would ordinarily have been terminated. Seagraves v. Austin Co.of Greensboro, 123 N.C.App. 228, 472 S.E.2d 397 (1996). In the present case, the evidence of record shows that plaintiff was improperly terminated for reasons related to his work-related injury (e.g. unsatisfactory performance) and defendants have failed to show that that a non-disabled employee would have been terminated for the corrective actions that defendants have alleged as grounds for plaintiff's termination. Id. Thus, plaintiff is entitled to benefits for the period in which he was unable to earn wages due to his improper termination by defendant-employer. Id.
4. As a result of the April 2, 2004, injury by accident, plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $308.69 from May 22, 2004, the date he was improperly terminated by defendant-employer for reasons related to his work-related injury, through December 17, 2004, the date he acquired other employment earning the same or greater wages as he earned while working for defendant-employer. N.C. Gen. Stat. § 97-29.
5. As a result of the April 2, 2004, injury by accident, plaintiff is entitled to receive permanent partial disability compensation for the fifteen percent (15%) permanent partial disability rating to his right arm at the weekly rate of $308.69 for thirty-six (36) weeks, which totals $11,112.84. N.C. Gen. Stat. § 97-31(13). *Page 9 
6. As a result of the April 2, 2004, injury by accident, plaintiff is entitled to receive medical treatment for his right arm and shoulder that is reasonably required to effect a cure, give relief, or lessen the period of plaintiff's disability, including the rotator cuff surgeries performed by Dr. Serene. N.C. Gen. Stat. § 97-2(19) and 97-25.
7. Defendants' defense of this claim was not unreasonable and, thus, attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is unwarranted.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $308.69 from May 22, 2004, through December 17, 2004, subject to the attorney's fee provided herein. Because this amount has accrued, it shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff permanent partial disability compensation for the fifteen percent (15%) permanent partial disability rating to his right arm at the weekly rate of $308.69 for thirty-six (36) weeks, which totals $11,112.84, subject to the attorney's fee provided herein. Because this amount has accrued, it shall be paid to plaintiff in a lump sum.
3. Defendants shall provide medical treatment for plaintiff's right arm and shoulder that is reasonably required to effect a cure, give relief, or lessen the period of plaintiff's disability, including the rotator cuff surgeries performed by Dr. Serene.
4. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the total compensation awarded herein. Because the *Page 10 
compensation upon which such fee is based has accrued, defendants shall pay plaintiff's counsel in a lump sum.
5. Defendants shall pay the costs of this action.
This 1st day of February 2007.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER *Page 1